**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALEX K. WICKS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 14-1636 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| FREEDOM AREA SCHOOL | ) | |
| DISTRICT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**I. MEMORANDUM**

Defendants' Motion to Dismiss (Doc. 8) will be granted.

**BACKGROUND**

Plaintiff brings this Section 1983 against his former school, and certain of its administrators, regarding his expulsion from high school and intended placement at a different academic institution. *See generally* Compl. (Doc. 1). Although Plaintiff was a minor when the incidents occurred, he attained adulthood by the time this lawsuit was filed. *See id.* at ¶ 1. His parents have not been joined as parties. *See generally id.*

In relevant part, Plaintiff alleges the following. Plaintiff received special education until he reached the seventh grade, at which time he no longer required it due to his improved grades and behavior. *Id.* at ¶ 13. When he transferred to high school, however, he again experienced difficulties "due to a number of environmental stressors, including working part-time and being improperly influenced by other students and school personnel." *Id.* at ¶ 14.

During the 2011-2012 school year, Plaintiff began associating with a physical education teacher, James Summers ("Summers").  *See id.* at ¶ 15.  Summers was addicted to pain medicine, he invited Plaintiff to partake in illicit drug-consumption, and they snorted the pills in Summers's school office.  *See id.* at ¶ 15-16.  This pattern of consumption continued throughout the school year, and Plaintiff alleges, on information and belief, that the school administration was aware, or had reasonable suspicion, of Mr. Summers's illicit drug-behavior with students for some time.  *See id.* at ¶¶ 20-25.  As a result of his drug consumption, Plaintiff began experiencing behavioral problems in school, and the administration placed him in a behavioral support program pursuant to an IEP.  *Id.* at ¶ 21.

In the fall of the next school-year, Defendants initiated an investigation of Summers, placing a video surveillance camera in his office.  *Id.* at ¶ 26.  On November 27, 2012, the video captured Summers and Plaintiff consuming drugs.  *Id.* at ¶ 27.  For some period, unspecified in the Complaint, the school allowed this conduct to continue so that Summers further could be investigated.  *See id.* at ¶ 28.  Subsequently, Summers was arrested and taken into custody by local police based on evidence obtained through the school's video surveillance.  *Id.* at ¶ 29.[1]

Summers admitted to providing prescription medication to Plaintiff and other students, and Plaintiff admitted his involvement and cooperated with the police.  *See id.* at ¶¶ 30-31.  "The School then searched Plaintiff's person, cell phone, and bookbag, and also obtained a

---

[1] The Complaint does not specify how long after Plaintiff's and Summers's conduct was observed on November 27th that their illicit drug-use was permitted to continue.  A review of the public record, however, reveals that criminal charges first were instituted against Summers on November 29th, two days later.  *See* Ct. of Comm. Pls. of Beaver Cty. Dkt. No. CP-04-MD-0000897-2012 (available on webpage for The Unified Judicial System of Pa. Web Portal, https://ujsportal.pacourts.us/docketsheets/cp.aspx).  This information is subject to judicial notice.  <u>Orabi v. U.S. Att'y Gen.</u>, 738 F.3d 535, 537 n.1 (3d Cir. 2014) (citations to quoted sources now, and hereinafter, omitted).  It also is consistent with the timeline in the Complaint, which alleges that criminal charges were instituted against Plaintiff, as well, on November 29th.  *See* discussion *infra*.

search warrant to search [his] vehicle." *Id.* at ¶ 32. The search produced "two packs of cigars, a 3-inch Winchester knife, three lighters, and a digital scale with suspected marijuana odor/residue on the surface." *Id.* at ¶ 33.[2]

Plaintiff and his parents were informed that he would receive a ten-day out-of-school suspension, and only would be permitted to return to school pending the outcome of a formal hearing of the School Board on December 10, 2012. *Id.* at ¶ 34. On November 29, 2012, criminal charges were brought against Plaintiff, charging him with possession of a controlled substance. *Id.* at ¶ 35. Shortly thereafter, "a plea agreement was entered into whereby Plaintiff agreed to plead guilty to the charge for possession of a controlled substance in exchange for withdrawing a charge for possession of drug paraphernalia." *Id.* at 36.[3] "An additional aspect of the plea bargain was that Plaintiff was required to cooperate with the investigation against Summers and agree to forfeit his appeal of permanent expulsion" from the school. *Id.* at ¶ 37.

A "manifestation determination hearing" was held on December 5, 2012, for the purpose of determining whether Plaintiff's misconduct/criminal activity was related to (*i.e.*, a manifestation of) his disability and/or the potential inefficacy of his IEP. *See id.* at ¶ 38; *see also* 20 U.S.C. § 1415(k)(1)(E) (provision of IDEA indicating that, if misconduct is not a manifestation of the child's disability, he or she may be disciplined as would any non-disabled child). Defendants determined that Plaintiff's conduct was not related to disability, and, in a final decision in January 2013, Plaintiff was permanently expelled. *See id.* ¶¶ at 39-42.

---

[2] No inference, reasonable or otherwise, can be drawn from the Complaint that Summers was involved in the use or distribution of marijuana. All allegations relate to his use and sharing of prescription pain medicine. *See generally id.*

[3] Given that the only "drug paraphernalia" referenced in connection with Plaintiff was the digital scale smelling of marijuana, it seems likely that Plaintiff's drug charge related to marijuana, not prescription drugs. Given that Plaintiff was a minor at the time, his criminal docket (for those charges) is not part of the public record. In any event, the precise nature of the charges in question are immaterial to the Court's legal analyses and conclusions.

As for Summers, he was charged with use/possession of drugs and drug paraphernalia, and the corruption of minors. *See id.* at ¶ 42. Summers pleaded guilty to the possession charge, and was sentenced to 23 ½ months of home detention with electronic monitoring. *See id.* at ¶ 43.

Plaintiff's specific grievances relate to Defendants' decisions regarding what to do with him post-expulsion. Plaintiff complains that Defendants told his parents, "the only alternative schooling institution it would permit Plaintiff to attend" was St. Stephen's School (hereinafter, "St. Stephens"), "in Zelienople, Pennsylvania, which specializes in providing academic instruction to students with behavioral and disability issues." *Id.* at ¶ 44 (emphasis in original); *see also id.* at ¶ 46 (St. Stephens had "a student body largely made up of persons with drug and disciplinary issues"). Whether this seems a fair description of Plaintiff's circumstances notwithstanding, Plaintiff and his parents had "apprehension regarding the [school's] reputation." *Id.* By then, Plaintiff had participated in drug abuse rehabilitation sessions, and he and his parents believed that enrollment at St. Stephens might cause him to "relaps[e] into an unhealthy environment and lifestyle." *Id.*

Plaintiff and his parents "advised . . . Defendants regarding their concerns about having [him] attend St. Stephens and requested that the Defendants provide . . . Plaintiff with other options," but none were offered. *Id.* at ¶ 48. Plaintiff's parents refused to enroll him at St. Stephens, and, as a result, the school filed a complaint in state court for his failure to attend school, in violation of compulsory-attendance rules. *Id.* at ¶ 49. The Complaint here contains no further information regarding the outcome of the state court proceeding. *See generally id.*

On these facts, Plaintiff asserts claims under the 14th Amendment, alleging a denial of due process in connection with his property interest in a public education. *See* Count II. He also alleges a substantive due process violation, based on Defendants' failure to protect him from

harm (*i.e.*, Plaintiff's continued ingestion of drugs). *See* Counts III. The remaining Counts assert parallel claims under the Pennsylvania Constitution. *See* Counts I, IV.

## ANALYSIS

Among other things, Defendants argue that Plaintiff cannot challenge his intended placement at St. Stephens because he failed to exhaust administrative remedies under the IDEA. *See* Defs.' Br. (Doc. 9) at 7-10. Plaintiff concedes his failure to exhaust, but he suggests that it should be excused because his agreement not to challenge Defendants' expulsion determination, made in a plea-deal to avoid criminal prosecution, constituted an "[un]knowing[]" and "[in]voluntary[y] waive[r]." *See* Pl.'s Opp'n Br. (Doc. 13) at 7-8. If only he and his parents had known that Defendants would send him to St. Stephens, the theory goes, he never would have taken the deal. *Cf. id.* at 8.

This theory is unsupported, both under the facts alleged and the law. Plaintiff, having enjoyed the benefit of his plea agreement, is ill-positioned to now claim it was unknowingly and involuntarily entered. He questions not the results of the agreement, namely his avoidance of criminal punishment and his expulsion from school. The expulsion is supported by Plaintiff's own factual averments, and the challenges he levels say nothing regarding the merits of that decision. Rather, Plaintiff is dissatisfied with his putative post-expulsion placement, a matter not claimed to have been addressed in the plea agreement. Hindsight is 20/20 and, assuming the validity of the plea agreement even properly is before this Court, it has no bearing on Plaintiff's duty to exhaust.

Otherwise, whether due to the plea agreement or not, Plaintiff bypassed clear and obvious administrative mechanisms covering the expulsion decision and post-expulsion consequences. *See generally* J.H. *ex rel.* J.P. v. Bernalillo Cnty., 61 F. Supp.3d 1085, 1161-62 (D. N.M. 2014)

(describing administrative procedures regarding manifestation determination and putative discipline, and clarifying that "[t]he IDEA expressly states . . . that [its] procedural safeguards do not apply to law enforcement officers investigating a crime committed by a disabled child") (emphasis added). Plaintiff's assumed inability to engage the administrative process was just that – an assumption – based on Plaintiff's desire to avoid the consequences, criminally, for his unlawful conduct.

In the same vein, had Plaintiff or his parents any complaints regarding the plea agreement or its perceived effects, there appears no good explanation why they could not have raised them contemporaneously, whether in the criminal proceeding, through the administrative process, or both. What Plaintiff could not do, in the Court's view, was sit back, do nothing, and later attempt an "end-run" around the administrative process.

Finally, the Court rejects Plaintiff's assumption that his placement at St. Stephens was unacceptable, and therefore unconstitutional, just because he and his parents said so. Even assuming Plaintiff's objections were well-founded,[4] "an entitlement to public education does not include the right to attend a particular school," and "[a] student's transfer [from his regular school] to an alternative education program" does not implicate the 14th Amendment. Lindsey v. Matayoshi, 2012 WL 1656931, *3 (D. Hawaii May 9, 2012) (collecting cases) (some alterations in original).

---

[4] From an objective standpoint, Plaintiff's and his parents' conclusion that St. Stephens was "not for him" is hardly beyond question, to put it delicately. Hinging constitutionality on Plaintiff's and his parents' subjective beliefs would be a troubling result, indeed. Of course, there were mechanisms in place for the testing of such opinions and beliefs, namely, the administrative process.

Plaintiff's substantive due process claim fares no better.[5] His protection-from-harm theory is premised on the notion that Defendants, having seen him consuming drugs with Summers on video, failed to curtail Plaintiff's "self-destructive drug use," for an unspecified period of time, in the interest of gathering more evidence. *See, e.g.*, Pl.'s Opp'n Br. (Doc. 13) at 12. At the onset, a comparison of Plaintiff's timing allegations (*i.e.*, drug-use first was recorded on November 27th, and Plaintiff was criminally charged on November 29th) reveals the gap to have been modest. Furthermore, the Complaint fails to explain why Plaintiff's ingestion of prescription drugs with Summers is at all relevant to "the digital scale with suspected marijuana odor/residue on the surface" recovered from Plaintiff's possession. *See* discussion *supra*. The suggestion that Plaintiff's drug-related activity resulted completely from Summers's improper influence strains the bounds of plausibility under *Iqbal/Twombly*.

These matters aside, Plaintiff's allegations fall well short of the applicable legal standards. The parties address two putative legal theories -- those of a "special relationship" and of a "state-created danger." *See* Def.'s Br. (Doc. 9) at 15-16; Pl.'s Opp'n Br. (Doc. 13) at 12. Plaintiff expends little energy arguing the special-relationship theory, which is unsurprising given how narrowly the Court of Appeals for the Third Circuit has construed it. *See* <u>Morrow v. Balaski</u>, 719 F.3d 160, 171 (3d Cir. 2013) (under special relationship theory, "public schools do not generally have a constitutional duty to protect students" based on the traditional school-student relationship; although the court "[did] not foreclose the possibility of a special relationship arising between a <u>particular</u> school and <u>particular</u> students under certain unique and narrow circumstances," "any such circumstances must be so significant as to forge a

---

[5] Although Count III, regarding Plaintiff's "bodily integrity," also makes reference to procedural due process, the Court can identify no articulable legal theory in that regard. Plaintiff's only meaningful claim is for substantive due process, and the Court will so limit its discussions.

different kind of relationship between a student and a school than that which is inherent in the discretion afforded school administrators as part of the school's traditional *in loco parentis* authority or compulsory attendance laws") (emphasis in original). The Complaint does not reveal such "unique and narrow circumstances," and the special-relationship theory is ill-fitting. *See* Morrow at 172 (declining to apply special-relationship status where "specific threat" was "a violent bully subject to two restraining orders," because relationships between students and school were insufficiently unique).

As to the state-created danger theory, Plaintiff is required to show that Defendants "create[d] or enhance[d] a danger" through conduct so culpable that it "shocks the conscience." *Id.* at 177 (emphasis in original). The bar is high,[6] and Plaintiff does not approach it.

Plaintiff's continued consumption of prescription pills, from the time he was video-recorded until the time the police intervened, does not constitute a danger "created" or "enhanced" by Defendants. Even assuming it was, Defendants' "allowing" Plaintiff to continue the behavior, for up to two days, while continuing to investigate Summers, does not "shock the conscience" of the Court. Rather, the school's continued investigation seems a reasonable corollary to its duty to remove from the educational environment a teacher engaging in gross misconduct, and to ensure that said individual was fully and successfully prosecuted under the criminal laws. With or without the specter of independent, contemporaneous drug-activity on behalf of Plaintiff (marijuana), his claim falls well short of the mark.

---

[6] By way of example, constitutionally-actionable harms have been found where a coach struck a student with a blunt object, knocking out his eye, and where a gym teacher picked up a student by his throat and rammed his head into bleachers and a fuse box. *See* Spady v. Bethlehem Area Sch. Dist., -- F.3d --, 2015 WL 5103553, *6 (3d Cir. Sept. 1, 2015). Even "minimal[-]type . . . intentional physical contact . . ., while deplorable, will rarely make out a constitutional violation." *Id.* (emphasis added).

Finally, Plaintiff's claims under the Pennsylvania Constitution get no further. "A violation of state law . . ., including [its] Constitution, cannot form the basis of a Section 1983 claim." Spell v. Allegh. Cnty. Admin., 2015 WL 1321695, *4 (W.D. Pa. Mar. 24, 2015). The Court, moreover, declines to exercise supplemental jurisdiction. Bright v. Westmoreland Cnty., 380 F.3d 729, 751 (3d Cir. 2004) ("absent extraordinary circumstances, where the federal causes of action are dismissed[,] the district court should ordinarily refrain from exercising [supplemental] jurisdiction over . . . state law claims").[7]

In then end, Plaintiff's lawsuit raises questions regarding the value our society now places on the virtues of self-awareness and acceptance of personal-responsibility. What it does not do, however, is state an actionable federal claim. While any resulting cynicism is tempered by Plaintiff's relative youth, he now is an "adult" in the eyes of the law, and, hopefully, he will use this experience as an opportunity to learn and grow.

For all of the reasons stated above, the Court hereby enters the following:

## II.  ORDER

Defendants' Motion to Dismiss (**Doc. 8**) is **GRANTED**.[8]


September 28, 2015                                    s\Cathy Bissoon
                                                     Cathy Bissoon
                                                     United States District Judge

---

[7] Plaintiff's fortune seem unlikely to change in state court. *See* Spell at *4 ("no private cause of action for damages exists for violations of the Pennsylvania Constitution").

[8] Although the Court typically would enter a Rule 58 judgment at this time, it cannot do so here because James Summers also has been named as a Defendant. *See* Compl. at ¶ 6. There is no proof of service regarding Summers, and the Court doubts that Plaintiff is interested in proceeding against him, alone. To be certain, the Court hereby affords Plaintiff's counsel until **October 5, 2015** to file a notice of intention to proceed. If no such notice is filed, the claims against Summers will be dismissed, and a Rule 58 Judgment will be entered.

cc (via ECF email notification):

All Counsel of Record